**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

**TUNICA WEB ADVERTISING, INC. AND**
**CHERRY L. GRAZIOSI,**                   **PLAINTIFFS,**

**VS.**                   **CIVIL ACTION NO. 2:03CV234-P-D**

**TUNICA COUNTY TOURISM ASSOCIATION;**
**BARDEN MISSISSIPPI GAMING, LLC (d/b/a**
**"Fitzgerald's Casino and Hotel"); BL DEVELOPMENT**
**CORP. (d/b/a "Grand Casino Tunica"); ROBINSON**
**PROPERTY GROUP, LTD PARTNERSHIP (d/b/a**
**"Horseshoe Casino &Hotel"); TUNICA PARTNERS II LP**
**(d/b/a "Harrah's Tunica Mardis Gras Casino");**
**BALLY'S OLYMPIA LIMITED PARTNERSHIP**
**(d/b/a "Bally's Saloon &Gambling Hall"); HWCC-**
**TUNICA, INC. (d/b/a "Hollywood Casino Tunica");**
**BOYD TUNICA, INC. (d/b/a "Sam's Town Hotel &**
**Gambling"); and SHERATON TUNICA**
**CORPORATION (d/b/a "Sheraton Casino & Hotel"),**     **DEFENDANTS.**

## ORDER

This matter comes before the court upon Tunica County Tourism Commission's Motion for Summary Judgment [305-1]. Upon due consideration of the motion and the responses filed thereto, the court finds as follows, to-wit:

In the original Complaint, filed June 27, 2003, the plaintiffs asserted five claims against the defendants. The first two antitrust counts concerned all nine casino defendants as well as the Tunica Casino Operators Association (TCOA) and the Tunica County Tourism Commission (TCTC). Counts three and four related to the casino defendants only. Count five, a breach of contract claim, was asserted against only the TCTC.

1

About five months later on November 22, 2004, the court entered a Memorandum Opinion and Order granting the defendants' immunity-based summary judgment motion insofar as Counts 1 through 4 were dismissed with prejudice as to the TCTC based on the governmental immunity to antitrust actions provided by the Local Government Antitrust Act, 15 U.S.C. § 35(a).

On February 11, 2005, the plaintiffs filed their Amended Complaint wherein the only claim asserted against the TCTC was the original breach of contract claim involving a settlement agreement entered into by the TCTC and the plaintiffs.

The TCTC brought suit against Cherry Graziosi for asserting ownership of the internet domain names "tunicamiss.com" and "tunicamississippi.com" when the TCTC, a governmental entity of Tunica County, already owned "tunicamiss.org" and "tunicamississippi.org." The basic terms of the Settlement Agreement were that (1) the TCTC agreed to pay $50,000 to Graziosi; (2) Graziosi relinquished tunicamiss.com and tunicamississippi.com to the TCTC; and (3) TCTC agreed to the following provision in Paragraph 4(c) of the Settlement Agreement:

> TCTC, for itself, its successors, assigns and legal representatives, does hereby release all claims or rights of any kind or nature in the ownership use, control of use, marketing, sale, or any other lawful use of the domain name "tunica.com."

In the Plaintiffs' First Amended Complaint, Paragraph 19 states:

> During May or June of 2001, Defendant TCTC entered a written contract with Plaintiff Graziosi in which TCTC both (A) purchased from Graziosi exclusive rights to two different internet websites or domain names, namely the sites known as "tunicamississippi.com" and "tunicamiss.com" and (B) released and <u>agreed not to assert</u> any claims or rights of any kind or nature in the ownership use, control of use, marketing, sale, or any other lawful use of the domain name "tunica.com," the website or domain name which is the subject of this action.

(emphasis added) [1].   Count 4 of the First Amended Complaint, entitled "Breach of Contract,"

provides:

> Through its own conduct as set forth above, Defendant TCTC breached its
> contract with Plaintiff Graziosi described in Paragraph 19 above, and is liable
> to Plaintiff Graziosi for the damages thereby caused in an amount to be
> proven at trial.

The TCTC argues *inter alia* that the plaintiffs have essentially waived their breach of contract

claim. On Page 24 of its response to the defendants' immunity-based motion for summary judgment,

the plaintiffs took the position that "no action at all was taken by the TCTC or its staff with respect

to the Plaintiffs' website [tunica.com] on or after May 31, 2001." This statement was important to

the  plaintiffs' overall position in that controversy that the TCTC did not direct or control the

marketing efforts of the casinos or the TCOA.

It is undisputed that the TCTC signed the Settlement Agreement between it and Graziosi

d/b/a Tunica Web Advertising on May 21, 2001 and that Graziosi did not sign until June 5, 2001.

It is also undisputed that the TCTC did not receive the Settlement Agreement executed by both

parties until July 2001. Having considered the plaintiffs' arguments to the contrary, the court

concludes as a matter of law that the Settlement Agreement was not effective until June 5, 2001.

Given that the plaintiffs took the position that "no action at all was taken by the TCTC or its

staff with respect to the Plaintiffs' website [tunica.com] on or after May 31, 2001" in response to the

defendants' immunity-based motion for summary judgment – a position that was material to that

---

[1] The TCTC points out that contrary to the language contained in the Paragraph 19 in the
Amended Complaint, Paragraph 4(c) did not say that TCTC "agreed not to assert." Rather, 4(c)
stated that TCTC released all claims or rights to tunica.com. The court agrees that there is a material
difference between "agreeing not to assert" any claims or rights with regard to "tunica.com" and
"releasing all claims or rights" to tunica.com.

controversy – the court concludes that the plaintiffs are judicially estopped from asserting otherwise.

The doctrine of judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988). "The purpose of the doctrine is 'to prevent parties from 'playing fast and loose' with (the courts) to suit the exigencies of self interest.'" *Id.* Stated differently, "[a] judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention. A statement made by counsel during the course of trial may be considered a judicial admission if it was made intentionally as a waiver, releasing the opponent from proof of fact." *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). "A judicial admission is conclusive, unless the court allows it to be withdrawn ...." *Id.* at 477.

The judicial admission that "no action at all was taken by the TCTC or its staff with respect to the Plaintiffs' website [tunica.com] on or after May 31, 2001" is dispositive in this case because the Settlement Agreement between the plaintiffs and the TCTC was not effective until June 5, 2001 – after May 31, 2001. Therefore, the plaintiffs have conceded that no breach of the Settlement Agreement occurred.

Accordingly, even viewing the facts in a light most favorable to the plaintiffs, the court concludes that there is no genuine issue of material fact necessitating a trial and precluding summary judgment as to the breach of contract claim against the TCTC.

**IT IS THEREFORE ORDERED AND ADJUDGED** that:

(1) Tunica County Tourism Commission's Motion for Summary Judgment [305-1] is hereby

**GRANTED**; therefore,

(2) All of the plaintiffs' claims against the Tunica County Tourism Commission are

**DISMISSED WITH PREJUDICE**.

**SO ORDERED** this the 20th day of December, A.D., 2005.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE