# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

TUNICA WEB ADVERTISING, INC. AND
CHERRY L. GRAZIOSI,                            PLAINTIFFS,

VS.                         CIVIL ACTION NO. 2:03CV234-P-D

BARDEN MISSISSIPPI GAMING, LLC (d/b/a
"Fitzgerald's Casino and Hotel"); BL DEVELOPMENT
CORP. (d/b/a "Grand Casino Tunica"); ROBINSON
PROPERTY GROUP, LTD PARTNERSHIP (d/b/a
"Horseshoe Casino & Hotel"); TUNICA PARTNERS
II LP (d/b/a "Harrah's Tunica Mardis Gras Casino");
BALLY'S OLYMPIA LIMITED PARTNERSHIP
(d/b/a "Bally's Saloon & Gambling Hall"); HWCC-
TUNICA, INC. (d/b/a "Hollywood Casino Tunica");
BOYD TUNICA, INC. (d/b/a "Sam's Town Hotel &
Gambling"); and SHERATON TUNICA
CORPORATION (d/b/a"Sheraton Casino & Hotel"),         DEFENDANTS.

## MEMORANDUM OPINION

This matter comes before the court upon the Defendants' Motion in Limine to Exclude Testimony of Plaintiff's Expert Alex Tajirian [347]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

### I. FACTUAL BACKGROUND

Cherry L. Graziosi and her company Tunica Web Advertising, Inc. assert the following remaining claims against the defendant casinos : (1) conspiracy in restraint of trade in violation of the Sherman Antitrust Act, Section One; (2) conspiracy in restraint of trade in violation of the Mississippi Antitrust Act; (3) intentional interference with business relations; and (4) intentional

1

interference with contractual relations. The casinos also have pending counterclaims against the plaintiffs.

On December 21, 2005 the court granted the Casino Defendants' motion for summary judgment and entered a Partial Final Judgment against the plaintiffs. On August 13, 2007 the Fifth Circuit Court of Appeals reversed and remanded the court's December 21, 2005 ruling.

The plaintiff proffers the expert testimony of Alex Tajirian for the purpose of calculating the hypothetical value of the plaintiffs' business but for the alleged boycott of the defendants and ascertaining the relevant market and public harm to competition caused by the alleged boycott. The defendants have moved to exclude Mr. Tajirian's testimony, arguing that his opinions fail to meet the standards of Federal Rules of Evidence 702 and 703 because: (1) his opinion that tunica.com would be worth $1.6 million and would be receiving advertising profits of $10,990.00 per month but for the alleged boycott is unreliable because the methodology employed to arrive at that opinion are based on invalid or exaggerated assumptions; (2) his opinion that the relevant market at issue is that of on-line advertising of Tunica as a travel destination and not all forms of advertising (*i.e.*, on-line advertising as well as traditional media) is unreliable because it was not based on econometric studies and is based solely on his subjective opinion and experience; and (3) his opinion that the alleged boycott has harmed the public is based on his subjective opinion and is not supported by objective, verifiable evidence. The defendants argue that all of Mr. Tajirian's opinions are based on faulty methodologies, irrelevant data, and a failure to properly "fit" his methodology with the data in this case.

The plaintiffs counter that Mr. Tajirian meets the standards of Rules 702 and 703 because he is immanently qualified, his opinions are demonstrably relevant and reliable, and are the product

of the same methodology that he employs in his every day business as the owner of DomainMart, Inc.

**<u>A. Standards</u>**

**1. Rule 702 Standards**

Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The current text of Rule 702, as amended in 2000, reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals., Inc..*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). "In Daubert the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in Kumho clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science." Advisory Committee's Note on 2000 Amendment of Fed. R. Evid. 702.

Ultimately, the district court must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert.*, 509 U.S. at 589. Under the familiar *Daubert/Kumho* standards and their progeny, it is not the court's duty to determine in a motion *in limine* to exclude an expert's testimony whether the expert in question is correct. This decision falls squarely within the province of the jury.

There are many factors to consider in whether to open the gate to an expert. These factors begin with Fed. R. Civ. P. 26(a)(2)'s provisions regarding expert reports. Next come the primary

factors under Fed. R. Evid. 702. To aid in considering the essentials of Rule 702, the decision in *Daubert* set forth several factors the courts should consider in its gate-keeping function. The Advisory Committee's Note on the 2000 Amendment of Rule 702 sets forth additional factors. For the purpose of clarity, the court will set forth all of the factors germane to considering whether to open the gate in the following manner:

**Fed. R. Evid. 702**

1. Is the witness qualified by knowledge, skill, experience, training, or education?

2. Is the testimony based on sufficient facts?

3. Is the testimony the product of reliable methods?

4. Did the witness apply those methods to the facts reliably?

*Daubert* **factors in determining Rule 702 requirements**

1. Can or has the theory/technique been tested? Can the theory/technique be challenged or is it a subjective, conclusory approach?

2. Is the theory/technique subject to peer-review or publication?

3. Is there a known or potential rate of error of the theory/technique when applied?

4. Were standards and controls used?

**Advisory Committee Notes to 2000 Amendment of FRE 702 factors**

1. Did the theory arise from litigation or independent research?

2. Is there "too great an analytical gap between the data and the opinion proffered," that is, does the theory "fit" with the facts of the case? *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

3. Did the expert adequately consider alternative explanations?

4. Was the expert "as careful as he would have been in his regular professional work

outside his paid litigation consulting"? *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997).

5. Is the expert's field of expertise known to reach reliable results for the type of opinion proffered?

"[A] trial judge *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability ... the test of reliability is 'flexible,' and *Daubert*'s list of specific *factors neither necessarily nor exclusively applies to all experts or in every case*."*Kumho*, 526 U.S. at 141 (1999) (emphasis in original). "The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Kumho*, 526 U.S. at 152. The district court has wide discretion in determining the admissibility of expert testimony, and its decision will be disturbed only for abuse of discretion. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 274 (5th Cir. 1998).

**B. Analysis**

**1. Qualifications**

According to the plaintiffs, "[f]or a longer period of time than anyone else on Earth, former economics professor Alex Tajirian, acting as the President, Chief Executive Officer, and sole owner of DomainMart, Inc., has been continually engaged in real-life market experience operating as a broker of transactions to buy and sell internet 'domain names'...." Plaintiff Response Brief at 2. The plaintiff also avers that Mr. Tajirian and his company have been hired by over one-thousand internet websites to prepare written reports appraising the market value of their domain names and thereby their websites. According to the plaintiffs' brief, Mr. Tajirian holds a Masters Degree in Economics

5

from the University of California at Berkeley, has taught undergraduate and graduate finance courses, and has been paid by major financial institutions to assist them in understanding internet website valuation.

The defendants argue that despite this experience, Mr. Tajirian has no experience or expertise in advertising, and is not designated or qualified to testify about what might be the best advertising practices for participants in travel destination markets.

Having considered the parties' briefs on the qualifications of Mr. Tajirian, the court concludes that pursuant to Rule 702 he is qualified to render his opinions on the relevant market, projected value of tunica.com but for the defendants' alleged boycott, and the alleged public harm resulting from this alleged boycott, by his education at the graduate level in economics as well as his experience, skill, and knowledge gained from his role as owner, President, and CEO of DomainMart, Inc., a company that specializes in valuation of websites and domain names – a specialization which necessarily includes experience in evaluating on-line advertising.

**2. Reliability**

As stated above, the primary issue for the court to determine is whether an expert who is qualified by experience, skill, education, or experience has reliably employed a reliable methodology upon sufficient facts to reach a reliable conclusion. In doing so, the court need not consider all of the reliability factors discussed in *Daubert* and its progeny or those contained in the Advisory Committee Notes to Fed. R. Evid. 702. Even if all factors are considered, they need not all weigh in favor of reliability. Furthermore, the court need not even agree with the proffered expert's opinions. Rather, the court must determine if the opinions are reliable and not the result of junk science or case-specific opportunism.

It is undisputed that Mr. Tajirian's opinions do not cite to any peer-reviewed publications, potential rates of error, or controls used. Nor does he appear to have considered alternative theories in reaching his valuation, relevant market, and public harm opinions.

However, his technique can be tested, as evidenced by the defendants' brief in support of their motion *in limine*. Though his technique was not shown to have been tested, he avers that his technique is the very one he employs in his everyday work as the President, CEO, and sole owner of DomainMart, Inc. Though Mr. Tajirian's opinions were not derived from independent research and were utilized for this particular case, the technique he used is the same employed in his actual business. Furthermore, Mr. Tajirian has not testified as an expert before the instant case.

As stated above, an expert's opinions need not necessarily be based on peer-reviewed, "scientific" reports or studies. Rather, expert opinions may also be based on experience, skill, or other specialized knowledge that renders the expert's knowledge expert – *i.e.*, more informed in the relevant field than the average layman to such a degree that the facts and methodology used to derive the expert opinion are reliable. The court concluded above that Tajirian's opinions are properly based on his experience and specialized knowledge to render him qualified to proffer his opinions on value, relevant market, and public harm in relation to the plaintiffs' domain name "tunica.com."

As the Supreme Court observed in *Kumho*, the objective of the *Daubert* gate-keeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or **personal experience**, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." 526 U.S. at 152 (emphasis added). In this instance, the plaintiff expert's relevant field is that of valuating and entering partnerships with domain names and their websites. Tajirian avers that he employs the same kind of data and the same

methodology in his every day business as he did in deriving his opinions in this case. Since this assertion is not seriously disputed, the court concludes that Tajirian's opinions survive the aforementioned standard enunciated in *Kumho*.

The court also concludes that there is not "too great an analytical gap between the data and the opinions proffered" and that Mr. Tajirian's opinions "fit" with the facts of the case. *See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). The court agrees with the plaintiffs in their brief that the defendants' arguments against the reliability of Mr. Tajirian's opinions are heavily based on the defendants' philosophical problem with the hypothetical nature of the opinions of what tunica.com would be worth and what its revenue would be but for the alleged boycott of tunica.com. The very nature of determining the value of a domain name and/or the accompanying website alleged to have been illegally boycotted, and therefore prevented from developing in a "free market," requires hypothetical judgments – though reliable hypothetical judgments. *See J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566-67 (1981) ("The vagaries of the market place usually deny us sure knowledge of what plaintiff's situation would have been in the absence of defendant's antitrust violation"); *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 379 (1927) ("[A] defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible."). Having considered the parties' arguments, the court concludes that Mr. Tajirian's opinions regarding value, relevant market, and public harm fit with the plaintiffs' task of producing evidence of what tunica.com would be worth but for the alleged antitrust violation.

## III. CONCLUSION

For the reasons discussed above, the court concludes that Defendants' Motion in Limine to Exclude Testimony of Plaintiff's Expert Alex Tajirian [347] should be denied. Though the court concludes that, pursuant to Fed. R. Evid. 702, Mr. Tajirian is qualified by experience, skill, and specialized knowledge in the actual market of domain names and his opinions are based on sufficient facts, and reliable principles and methods applied reliably, this is not to say that the court necessarily agrees with Mr. Tajirian's opinions. Rather, the veracity of Mr. Tajirian's opinions is for the jury to decide. The defendants are free to levy their arguments against the veracity of Mr. Tajirian's opinions during cross-examination. Accordingly, and Order shall issue forthwith,

**THIS DAY** of September 18, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE