**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**TUNICA WEB ADVERTISING, INC.**                                                      **PLAINTIFF**

**VS.**                                                                     **CAUSE NO.: 2:03CV234-SA-JAD**

**BARDEN MISSISSIPPI GAMING, LLC**
**(d/b/a "Fitzgerald's Casino and Hotel")**                                           **DEFENDANT**

## ORDER GRANTING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE
## NOVEMBER 19, 2002 EMAIL

This cause comes on for consideration on Defendant Barden Mississippi Gaming, LLC's (d/b/a "Fitzgerald's Casino and Hotel") Motion in Limine [453]. The Court finds as follows:

The Plaintiff proffers an email from Clyde Callicott, then the marketing director for Bally's and Sheraton Casino, to Cherry Graziosi. The email states,

> The meeting went well ... however it's [sic] looks like the Tunica casino (the TCOA) is turning their backs on Rudi thanks to a special meeting held last week backed by Dominic from Fitzgeralds. They apparently held a meeting last Tuesday to discuss this ... in a similar fashion as they did when you where [sic] involved. They voted to stray [sic] away from the site so it could evently [sic] be sold and bought at a later date by them. Dominic asked for a majority vote from each property to see if they would ban advertising on this site ... his arguement [sic] is that (although valuable) it is not for one individual to profit from. He beleaves [sic] that the state should own the site. With such a strong opponent [sic], no property will cross that line individual [sic] to advertise with this project.

An email earlier that day stated,

> Dominic (just as he did with the last TCOA meeting) asked for a majority vote from each property to see if they would ban advertising on this site.
>
> his arguement [sic] is that (although valuable) it is not for one individual to profit from. He beleaves [sic] that the state should own the site. With such a strong opponnent, [sic] no property will cross that line individual [sic] to advertise with this project.

Defendant moves to exclude these emails on the basis that they are inadmissible hearsay under Federal Rule of Evidence. 801. Moreover, the Defendant avers that according to Callicott's deposition, Callicott did not attend any meeting, and thus, he has no personal knowledge of the contents, or statements at the alleged meeting.

Conversely, Plaintiff states that Judge Pepper has already ruled the emails are admissible since he held that the June 6th email was admissible. Furthermore, Plaintiff avers that the Fifth Circuit intended for a jury to weigh the credibility of the emails when they noted that the evidence "if credited, [is] direct evidence that the casinos agreed not only to reject TWA's initial proposal, but also to refuse to do business with TWA and 'tunica.com' individually." Tunica Web Adver. v. Tunica Casino Operators Ass'n, Inc., 496 F.3d 403, 410 (5th Cir. 2007).

The Plaintiff also insists that Callicott was still a co-conspirator at the time of the emails, thus, making the evidence an admission of a co-conspirator. Lastly, the Plaintiff maintains that the emails are independently admissible as non-hearsay statements demonstrating too many of the contents of the boycott agreement itself and, therefore, are deemed "verbal acts" of legal significance apart from the trust of what they assert.

*DISCUSSION*

Callicott's testimony is being offered at trial in the form of a deposition. Thus, the Court has adequate evidence before it in order to rule on the admissibility of the evidence.

A. Non-hearsay: Co-Conspirator Admissions

Under the co-conspirator exception to the hearsay rule, the court must make a preliminary factual examination, under Rule 104(a), that the statement is a co-conspirator statement within the definition of Federal Rule of Evidence 801(d)(2)(E). Bourjaily v. United States, 483 U.S. 171 (1987). The Court must find 1) there was a conspiracy in existence; 2) the declarant was a

member of the conspiracy; 3) the defendant against whom the statement is offered was a member of the conspiracy; 4) the statement was made during the course of the conspiracy; and 5) the statement was made in furtherance of the conspiracy. Id.

The Court finds Callicott was not acting in his capacity as marketing director for Bally's and Sheraton Casino at the time of the November email. The email was sent from his personal email. Callicott was working with Graziosi and Schiffer at time of email; thus, it does not concern a matter within the scope of employment of his employer. In his deposition, he testified the email was sent to Graziosi to assist her and Schiffer. It is not relevant for purposes of this analysis that Callicott was not present at the meeting because first-hand knowledge (personal knowledge) is not required in proving admissions. In sum, at the time of the email, Callicott was not a member of the conspiracy.

B. Hearsay & Non-hearsay: Verbal Acts

An out-of-court statement is not inadmissible as hearsay if it has relevancy apart from the truth of the matter that it asserts or implies. United States v. Catano, 65 F.3d 219, 224-45 (1st Cir. 2002). Furthermore, a "verbal act" or a statement the making of which has substantive legal significance is non-hearsay. United States v. Jones, 663 F.2d 567, 571 (5th Cir. 1981).

The emails do not fit within these exclusions because the statements, uttered by Callicott, do not have independent substantive legal significance. Callicott's perception of a meeting that he did not attend does not establish the existence of a conspiracy. Furthermore, Callicott testified in his deposition that he "had to be" basing the email on something Rudi Schiffer told him. It is imperative to note that Schiffer was not an agent, not within the scope of employment, and not acting as a co-conspirator with the casinos. Schiffer's stated in his deposition that he did

not tell Callicott that a meeting was held and a vote was taken. Schiffer's alleged statements to Callicott are not non-hearsay and do not meet any exception under FED. R. EVID. 803.

Thus, the emails are double hearsay. Double hearsay may be admissible if an exception applies to each layer of hearsay. FED. R. EVID. 805.

The Court finds that the emails are being offered in evidence to prove the truth of the matter asserted. Specifically, they are being offered to prove that 1) there was a November meeting with members of the Association; 2) the vote was taken not to use the site; and 3) an agreement among the casinos existed, i.e., that "no property will cross that line individual [sic] to advertise."

Moreover, the statements do not have the equivalent circumstantial guarantees of trustworthiness to be excluded under Federal Rule of Evidence 807. Callicott testified he was not aware of any ban on advertising which is contrary to the email's contents. Further, Schiffer testified he had no knowledge of any meeting where Mezzatta or anyone else called for a vote.

In sum, the Defendant's Motion is Limine [453] is **GRANTED**.

So **ORDERED**, this the 14th day of August, 2008.

                                              **/s/ Sharion Aycock**
                                              **U.S. DISTRICT COURT JUDGE**