## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## DELTA DIVISION

**TUNICA WEB ADVERTISING, INC.**                                      **PLAINTIFF**

**VS.**                                           **CAUSE NO.: 2:03CV234-SA-JAD**

**BARDEN MISSISSIPPI GAMING, LLC**
**(d/b/a "Fitzgerald's Casino and Hotel")**                           **DEFENDANT**

### ORDER DENYING DEFENDANT'S MOTION IN LIMINE

This cause comes on for consideration on Defendant Barden Mississippi Gaming, LLC's

(d/b/a "Fitzgerald's Casino and Hotel") Motion in Limine to Preclude Damage Testimony of

Plaintiff's Expert [454].  The Court finds as follows:

The Plaintiff brings forth the expert testimony of Alex Tajirian in order to calculate the

hypothetical value of plaintiff's business.  Furthermore, the Plaintiff's expert ascertains the

relevant market and public harm to competition caused by the alleged boycott.  The Defendant

now moves to exclude Mr. Tajirian's testimony asserting that his opinions are based on

assumptions, which do not rationally relate to the business of TWA.  Further, Defendant avers

that Mr. Tajirian created an imaginary company and has not compared "tunica.com" to any

similar company.  Lastly, Defendant also argues the "click volume" analysis is too speculative.

FED. R. EVID. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court decisions in Daubert v. Merrell Dow Pharmaceutical, Incorporated,

509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) and Kumho Tire Company, Limited. v.

Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) govern the exclusions of experts. "In Daubert the Court charged the trial judges with responsibility of acting as gatekeeper to exclude unreliable expert testimony, and the Court in Kumho clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science." *Advisory Committee's Note on 2000 Amendment* of FED. R. EVID. 702.

The district court must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589, 113 S. Ct. 2786. Courts will analyze many factors in determining an expert's admissibility.

FED. R. EVID. 702 provides:

1. Is the witness qualified by knowledge, skill, experience, training, or education?
2. Is the testimony based on sufficient facts?
3. Is the testimony the product of reliable methods?
4. Did the witness apply those methods to the facts reliably?

The Daubert factors in determining Rule 702 requires:

1. Can or has the theory/technique been tested? Can the theory/technique be challenged or is it a subjective, conclusory approach?
2. Is the theory/technique subject to peer-review or publication?
3. Is there a known or potential rate of error of the theory/technique when applied?
4. Were standards and controls used?

*Advisory Committee Notes to 2000 Amendment* of FED. R. EVID. 702 factors:

1. Did the theory arise from litigation or independent research?
2. Is there "too great an analytical gap between the data and the opinion proffered," that is, does the theory "fit" with the facts of the case? General Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).
3. Did the expert adequately consider alternative explanations?
4. Was the expert, "as careful as he would have been in his regular professional work outside his paid litigation consulting?" Sheehan v. Daily Racing Form, Inc., 104 F.3d 940, 942 (7th Cir. 1997).
5. Is the expert's field of expertise known to reach reliable results for the type of opinion proffered?

A trial judge may consider one or more of the factors in Daubert. Kumho, 526 U.S. at 141, 119 S. Ct. 1167. The district courts have wide discretion in determining the admissibility of expert testimony. Moore v. Ashland Chem. Inc., 151 F.3d 269, 274 (5th Cir. 1998).

The Plaintiff maintains, "[f]or a longer period of time than anyone else on Earth, former economics professor Alex Tajirian, acting as the President, Chief Executive Officer, and sole owner of DomainMart, Inc., has been continually engaged in real-life market experience operating as a broker of transactions to buy and sell internet 'domain names.'" Furthermore, the Plaintiffs assert that Mr. Tajirian has been hired by over one-thousand internet websites to prepare written reports appraising the market values of their domain names and websites. Mr. Tajirian holds a Masters Degree in Economics from the University of California at Berkley, has taught undergraduate and graduate finance courses, and has been paid by major financial institutions to assist them in understanding internet website valuation.

*DISCUSSION*

Judge Pepper previously ruled on the precise issues on September 18, 2007. Tunica Web Adver., Inc. v. Barden Miss. Gaming, LLC, 2007 WL 2768914 (N.D. Miss. Sept. 18, 2007). Although the Defendant's argue that the issue of lost profits was not contemplated by Judge Pepper, this Court believes lost profits were contemplated.

This Court concludes, as Judge Pepper did, that Mr. Tajirian is qualified to render his opinions on the relevant market, the projected value of tunica.com but for the defendants' alleged boycott, and the alleged public harm resulting from this alleged boycott. Additionally, the Court finds that he is qualified to render testimony as to the alleged lost profits.

Furthermore, the Court must determine the reliability of the expert and his testimony. As held by Judge Pepper, "the very nature of determining the value of a domain name and/or the

accompanying website alleged to have been illegally boycotted, and therefore prevented from developing in a 'free market', requires hypothetical judgments – though reliable hypothetical judgments." Tunica Web Adver. at *4 (citing J. Truett Payne Co. v. Chrysler Motors Corp., 451 U.S. 557, 566-67, 101 S. Ct. 1923, 68 L. Ed. 2d 442 (1981)); Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 379, 47 S. Ct. 400, 71 L. Ed. 684 (1927). Moreover, if there has been a boycott, then the victim will have a difficult task in proving the success of the website, considering the victim has been denied the access to those mediums. Eastman Kodak Co., 273 U.S. at 379, 47 S. Ct. 400 ("[A] defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible."). Applying the factors in Daubert, the Court concludes, at this juncture, that Mr. Tajirian's opinions regarding value, relevant market, and public harm fit within the plaintiff's aim of producing evidence of what "tunica.com" would be worth but for the alleged antitrust violation.

Because it appears that Mr. Tajirian is qualified to testify in the area in which he has been designated, that his testimony will be relevant, that his methods were based on reliable methodology, the Defendant's arguments appear to be more appropriately the subject of cross-examination and not require exclusion of Mr. Tajirian testimony at this time. See Daubert, 509 U.S. at 595, 113 S. Ct. 2786 ("Vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); Slaughter v. Southern Talc Co., 919 F.2d 304, 306 (5th Cir. 1990) (holding that "[a]s a general rule, questions regarding the bases of an expert's opinion 'affect the weight to be assigned that opinion rather than its admissibility and should be

left for the jury's consideration.'" (quoting <u>Viterbo v. Dow Chemical Co.</u>, 826 F.2d 420, 422 (5th Cir. 1987))).

As to lost profits, notwithstanding that the Court believes Judge Pepper contemplated lost profits, this Court comes to the same conclusion, i.e., that the Mr. Tajirian's opinion regarding lost profits is based on reliable methodology.   In sum, it is for a jury to determine the veracity of Mr. Tajirian's testimony.

Moreover, although Judge Pepper is no longer presiding over it, his previous opinion presumably constitutes the law of this case.  Notwithstanding that the law of the case governs, the Court independently concurs with Judge Pepper and agrees that Mr. Tajirian's testimony shall not be excluded.

The Court agrees with the Defendant to the extent that a ruling under <u>Daubert</u> does not mean that the Court will automatically accept the expert's opinion at trial.  The expert's opinion must be admissible under applicable Fifth Circuit guidelines regarding damages.  For example, in <u>Eleven Line, Incorporated v. North State Texas Soccer Association, Incorporated</u>, the Fifth Circuit concluded that the expert's damage testimony, even if admitted, would not have provided a sufficient basis on which the jury could have arrived at a reasonable and just estimate of actual damages and was properly excluded by the district court.  213 F.3d 198 (5th Cir. 2000).  Thus, the Court may conclude at trial that the expert's testimony is not admissible.

In accordance with this opinion, Defendant's Motion in Limine [454] is **DENIED**.

So **ORDERED**, this the 14th day of August, 2008.

**/s/ Sharion Aycock_____**
**U.S. DISTRICT COURT JUDGE**
